Clarence KADRMAS, a Minor, by his Guard-
ian ad litem, Vitres Kadrmas, Plaintiff
and Respondent,

v.

Arthur MUDNA, also known as Arthur Me-
duna, Defendant, Third-Party Plaintiff
and Appellant,

v.

FARMERS INSURANCE EXCHANGE, Los
Angeles, California, Third-Party De-
fendant and Respondent.

No. 7924.

Supreme Court of North Dakota.

Jan. 31, 1961.

Greenwood & Swanson, Dickinson, for third-party plaintiff and appellant.

Conmy, Donahue & Conmy, Bismarck, for third-party defendant and respondent.

MORRIS, Judge.

Clarence Kadrmas, a minor, brought an action by his guardian ad litem to recover damages for personal injuries received on August 15, 1958 in an automobile accident. The driver of the automobile and defendant in that action was Arthur Mudna. Mudna caused to be issued a third-party summons and complaint in which the Farmers Insurance Exchange was named as third-party defendant. The court ordered a separate

trial of the issues on the third-party claim. The action against Mudna was tried to a jury. A verdict was returned against him for $15,000 upon which judgment was duly entered. The issues arising between the third-party plaintiff and the third-party defendant were tried to the court without a jury pursuant to a stipulation of the parties. The court made findings of fact and conclusions of law, and ordered dismissal of the third-party complaint with prejudice. Arthur Mudna, the third-party plaintiff, appeals from a judgment of dismissal entered pursuant to the order.

At the time the accident occurred there was in effect a liability insurance policy issued by Farmers Insurance Exchange to Mary Kadrmas describing the automobile involved. This policy contained the following extended coverage clause:

"(1) If the insured named in Item 1 of the Declarations is an individual, the term 'named insured' includes his spouse if a resident of the same household; (2) the unqualified 'insured' includes (a) the named insured and his relatives, and (b) with respect to the described automobile, or a newly acquired automobile, any other person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or with his permission, * * *."

Another provision of the policy defines relatives as:

"The unqualified word 'relatives' means, while residents of the named insured's household, his relatives and any other person under the age of twenty-one in the care of an insured."

Item 1 of the declarations designates Mary Kadrmas as the named insured.

Clarence Kadrmas was injured while riding in the automobile described in the policy while it was being driven by Arthur Mudna who claims to be an insured within the terms of the extended coverage clause.

The trial court determined that Arthur Mudna was not an insured. Mudna contends on this appeal that the trial court erred. Clarence, who was between 18 and 19 years of age, testified that for about three weeks prior to the accident he had been working on a farm operated by his brother-in-law and that Arthur Mudna was a fellow employee. A few days before the accident he and another young man went to Minneapolis for a physical examination for enlistment in the U. S. Marine Corps. On their return trip they rode all night on the train, in a coach, and arrived in the city of Dickinson about four o'clock in the morning. Clarence Kadrmas went out to his father's farm for breakfast and then to his brother-in-law's farm where he worked throughout the day. In the evening he went to Dickinson in the automobile described in the policy, which he used with his mother's permission. He took with him his fellow employee, Arthur Mudna, and on the way picked up three other young men. Some vodka and beer was purchased. It appears from other testimony that Clarence did the driving. They went out to a dance hall known as the Highway Inn. Clarence drank some of the liquor. While they were at the inn he told one of his companions that he was going to sleep and that when they were ready to leave, to wake him. He then went to the car and got in the back seat for the purpose of going to sleep. The next thing he remembered was regaining consciousness while lying in a ditch following the accident. He had not given Mudna permission to drive the car. He thinks it was about eleven-thirty o'clock in the evening when he went to the car to sleep, although it could have been as late as twelve-thirty.

Arthur Mudna testified that he did not know who was driving the car at the time of the accident. The jury found that he was the driver. He says that he does not remember the time he left the Highway Inn and that the next thing he does remember was that he was hanging over the wheel of the automobile after the acci-

dent and Clarence Kadrmas was lying in the ditch behind the car. He does not claim that he had permission from either Clarence or Mary Kadrmas to drive the automobile.

The witness Harry Messmer saw Kadrmas and Mudna at the Highway Inn. He testified that at about twelve-thirty A.M. he talked to Clarence, that Clarence and Arthur walked to the car, Clarence got in the back seat and Arthur got in front. There were already two other men in the front seat. In five or ten minutes the car drove off. Arthur was driving. The record is silent as to who the other men were or what became of them.

The place where the accident occurred was about three miles northwest of Dickinson. There is no evidence to show the location of the accident with respect to the farms where Clarence Kadrmas lived or worked. The time of the accident is not established.

■ A highway patrolman who investigated the accident testified that he talked to Mudna in the hospital and as near as the patrolman could remember Mudna told him that he was driving about 55 miles per hour and denied doing any drinking. The patrolman also interviewed Clarence Kadrmas and the gist of that conversation was to the effect that Kadrmas was driving. Further examination of the patrolman discloses the following:

"He said, that is the general gist of it was that the reason he told you that he was driving the car was that he didn't want his father to know he let somebody else use the car? A. Yes, that was the gist of the conversation."

This testimony, together with the evidence that Mudna got into the driver's seat of the car, that Clarence Kadrmas got into the back seat, and that the car left the vicinity of the Highway Inn five or ten minutes thereafter, is the only evidence upon which the appellant bases his argument that he was driving with the permission or at the request of Clarence Kadrmas. Upon this premise he argues that this case falls within the rule announced by this court in Persellin v. State Automobile Insurance Association, 75 N.D. 716, 32 N.W.2d 644. The rule is that:

"A person, using an automobile to entertain friends and transport them from place to place, who turns over manual operation of the automobile to one of his guests but remains in the automobile with full power of control over its use, continues to be the person using such automobile."

It is argued that Kadrmas was the user of the car at the time of the accident, that Mudna was driving for him, and therefore Mudna became an insured whom the policy protected against liability. In Persellin v. State Automobile Insurance Association, supra, we construed a similar extended coverage provision and said:

"In addition to the named insured, it makes both persons using the automobile and persons responsible for the use thereof insured persons, if but one condition be met. That condition is that the actual use of the automobile be with the permission of the named insured. There is no condition that the driving or operation of the car must be with the permission of the named insured, and no condition that a person, other than the user, who may become legally responsible for the use of the automobile must have the permission of the named insured."

■■ The facts presented by this record do not bring the case within any rule of law stated in the Persellin case. Mrs. Kadrmas gave her son permission to use the car but no permission to let others drive it. When the accident happened Mudna was driving without the knowledge or consent of Mary Kadrmas, the named insured. Mudna would only become an insured within the terms of the policy if Clarence Kadrmas could be said to be

using the car while Mudna was driving it. The preponderance of the evidence shows that Clarence did not give permission, either express or implied, that the car be driven by anyone. He was asleep in the back seat which he had entered not for the purpose of going or being taken anywhere, but for the purpose of sleeping until his companions were ready to leave, at which time they were to wake him up. The inference was that he would do the driving as he had been doing throughout the evening. It cannot be said that Clarence Kadrmas was using the car merely because he was in it when the accident happened. He entered the car for repose and not for transportation. The use contemplated by the policy is use as a vehicle, not a bed. We agree with the determination of the trial court that Mudna was not an insured within the terms of the policy. The judgment is affirmed.

SATHRE, C. J., and BURKE, TEIGEN, and STRUTZ, JJ., concur.