Merrimack,
No. 5221.

ALLSTATE INSURANCE COMPANY

*v.*

LESTER R. PAGE & *a.*

Argued April 8, 1964.
Decided June 2, 1964.

*Devine, Millimet, McDonough, Stahl & Branch* and *Ernest D. Dufresne* (*Mr. Dufresne* orally), for the plaintiff.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *T. William Bigelow* (*Mr. Bigelow* orally), for the defendant Blakeslee.

*Perkins & Dowst* for the defendant Eleanor M. Hill and *Robert D. Branch* for the defendant Henry J. Hill, furnished no briefs.

DUNCAN, J.   By its policy of insurance, styled a "Crusader" policy, the plaintiff undertook to pay "all damages which the insured shall be legally obligated to pay because of . . . injury to or destruction of property, arising out of the ownership, maintenance or use . . . of the owned automobile," a 1958 Lincoln convertible.   The policy provided that it insured, in addition to the named insured and any resident of his household: "Any other person with respect to the owned automobile, provided the actual use thereof is with the permission of the named insured."

The depositions upon which the findings and ruling of the Trial Court were made disclosed that for some time prior to August 26, 1961, Mrs. Hill and Lester Page were both employed at the same establishment in Concord between midnight

and 7:30 A. M. While at work, Mrs. Hill customarily parked the insured automobile near her place of employment, and on previous occasions she and Mr. Page had met in the insured automobile during the lunch hour from 4 to 4:30 A. M.

On August 25, 1961 Mr. Page had been absent from work and shortly after midnight called on Mrs. Hill at her place of employment and obtained the keys to the automobile. According to the depositions this was so that he might wait for Mrs. Hill in the car until the lunch hour. Instead of waiting, however, he drove the automobile to Manchester, and was returning to Concord with it when a state trooper, to whom the car had been reported as stolen, saw it and gave chase. Page, who had had little driving experience and held no operator's license, thereupon attempted to outdistance his pursuer, lost control of the vehicle, and collided with the defendant Blakeslee's Indian Cliff Gift Shop in Hooksett. Subsequently, Page pleaded guilty to a charge of taking the automobile without the permission of the owner.

The Trial Court made the following findings: "The evidence discloses that Mrs. Hill and Mr. Page had been conducting an affair of some intimacy, which at least prior to this case was of a clandestine nature. The Court finds that Mr. Page had lost his license some time prior to the accident, and, according to the testimony of both Mr. Page and Mrs. Hill, had not only not driven the Lincoln convertible but had been told by Mrs. Hill that he could not drive it. He had been given the keys so as to wait for Mrs. Hill in the car on one or two prior occasions when it was raining. On the night in question, which was warm and fair, Mrs. Hill gave him the keys some two or three hours prior to the time when she would be available, and with the knowledge that he had been drinking.

"The Court finds upon all the evidence that the actions of Mrs. Hill placed the automobile within his possession and control, and that in spite of the denials of expressed consent, in fact, this constituted implied consent on the part of Mrs. Hill that Mr. Page use the automobile."

If the plaintiff is liable to provide coverage to Page under the terms of its policy, and without regard to statute (RSA 268:16 VI) liability must rest upon the finding of implied consent or permission. Both Page and Mrs. Hill denied that any express permission was given to Page to operate the automobile, and Page testified that he was told by Mrs. Hill when she gave him

the keys on the morning of August 26 that he should not drive the car. Mrs. Hill's testimony corroborated that of Page. She conceded that Page apparently had been drinking, and was "a little unsteady on his feet" when she gave him the keys to the automobile. According to her testimony, he told her "he was going to walk home and get cleaned up and come back." According to Page's testimony, he asked Mrs. Hill if he could borrow the keys "to get in the car and sleep."

In support of its exception, the plaintiff takes the position that a finding that there was no express consent was "mandatory" in view of the testimony of both Page and Mrs. Hill that Page was instructed not to drive the car; and that there was no evidence of any "course of conduct" to warrant the finding of implied consent in the face of this testimony of express prohibition. See *Standard &c. Ins. Co.* v. *Gore*, 99 N. H. 277, 282; *Allstate Ins. Co.* v. *Hodsdon*, 92 N. H. 233.

The defendant Blakeslee asserts that the finding of the Trial Court was warranted by the undisputed evidence that Mrs. Hill gave Page the ignition keys, and by the evidence bearing upon the relationship between them.

Plainly if the testimony of the parties were believed, no express permission was given by Mrs. Hill and she did not consent to operation of the automobile by Page. *Dickinson* v. *Great American Indemnity Co.*, 296 Mass. 368, 370-371. It could be found upon the testimony that Page had permission to "use" the car as a place in which to sleep; but this was not the use out of which the injury arose. See *Kadrmas* v. *Mudna*, (N.D.) 107 N. W. 2d 346, 349; Austin, Permissive Use under the Omnibus Clause, 29 Ins. Counsel J. 49, 62(1962).

It has been held that in appropriate circumstances delivery of the keys to another without more constitutes "tacit permission to use" the automobile. *Hall* v. *Illinois Nat. Ins. Co.*, 34 Ill. App. 2d 167, 170. See *Peterson* v. *Grieger, Inc.*, 57 Cal. 2d 43.

There can be no dispute that the Trial Court was entitled to disbelieve the testimony that Page was instructed not to drive the car. However, disbelief of the testimony did not of itself permit an affirmative finding to the contrary (*Massachusetts Bonding &c. Co.* v. *Burrows Motor Co.*, 104 N. H. 417, 422), and no circumstantial evidence to warrant a finding of implied permission appears. If the evidence concerning the prior relationship of the parties and their previous course of conduct with reference to use of the vehicle admits of any inference (*Standard*

*&c. Ins. Co.* v. *Gore*, 99 N. H. 277; *Massachusetts Bonding &c. Co.* v. *Burrows Motor Co., supra*), it suggests prohibition of use as the most likely implication.

The findings of the Trial Court do not rest either expressly or exclusively upon interpretation of the policy. The policy was governed by the provisions of the financial responsibility act (RSA 268:16) which provides in part as follows:

"REQUIRED PROVISIONS. A motor vehicle liability policy shall be subject, with respect to accidents which occur in New Hampshire and within limits of liability required by this chapter, to the following provisions which need not be contained therein: . . .

"(VI) The insurance applies to any person who has obtained possession or control of the motor vehicle of the insured with his express or implied consent even though the use in the course of which liability to pay damages arises has been expressly or impliedly forbidden by the insured or is otherwise unauthorized. This provision, however, shall not apply to the use of a motor vehicle converted with the intent wrongfully to deprive the owner of his property therein." RSA 268:16 VI.

The findings of the Court in part employed the statutory language of consent to "possession and control." See also, RSA 268:1 VII (supp). No express finding was made on the question of whether the vehicle was "converted with the intent wrongfully to deprive the owner of his property therein." But the ruling that the plaintiff is obligated to defend the pending law action requires that a finding that it was not so converted be implied, since no special finding would conflict therewith. *Franklin* v. *Wirz*, 104 N. H. 335, 338; *Foodmaster, Inc.* v. *Moyer*, 101 N. H. 298.

The finding could properly be made upon the evidence. The plea entered by Page to the criminal charge lodged against him after the accident was evidence of lack of permission to take the vehicle (RSA 572:45), but not conclusive proof of conversion with intent to deprive Mrs. Hill of her property. See 7 Am. Jur. 2d 848, 849, "Automobiles and Highway Traffic," *s.* 304; 8A Blashfield, Cyc. of Automobile Law & Practice, *s.* 5612. Page's conduct may have been a technical conversion such as to subject him to liability to Mrs. Hill for the damage which resulted to the automobile. *Caron Enterprises, Inc.* v. *Company*, 87 N. H. 371, 372, and cases cited. See Restatement, Torts, *s.* 223(c); Prosser, The Nature of Conversion, 42 Cornell L. Q. 168, 173, 183. But that is not the issue presented.

Doubtless use of a motor vehicle which has been "expressly . . . forbidden" (RSA 268:16 VI, *supra*) may operate temporarily to deprive an owner of possession and thus in a limited sense to deprive him of a property right. However, since the Legislature expressly provided that the insurance should apply in case of such misconduct by one originally having possession and control with the owner's consent, it obviously did not intend such a "temporary" conversion by the last sentence of subsection VI, *supra*. The issue under the concluding provision of the section is whether Page intended "wrongfully to deprive the owner of [her] property" in the vehicle. The evidence contains no suggestion that Page had any intention of disposing of the automobile in disregard of Mrs. Hill's ownership, or of denying her proprietary rights, which is what the provision must be deemed to require. On the contrary the testimony tended to indicate an intention on the part of Page to return the automobile to Mrs. Hill in Concord by the time she should be free for lunch.

The ruling of the Trial Court that the plaintiff is required to defend the pending action is therefore sustainable under the statute, and accordingly the order is

*Exception overruled.*

All concurred.