NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, Plaintiff,

v.

Clarence GIBBONS, Defendant,

and

Steven Lesselyoung, Intervening Defendant.

Civ. No. 1080.

United States District Court, D. North Dakota, Southwestern Division.

Jan. 19, 1972.

Leonard H. Bucklin, Zuger, Bucklin & Zuger, Bismarck, N. D., for plaintiff.

Curtis W. Hanks, Lemmon, S. D., for defendant Clarence Gibbons; F. John Smith, Bismarck, N. D., of counsel.

James A. Clement, Hettinger, N. D., and Johnson & Kelley, Lemmon, S. D., for defendant Steven Lesselyoung.

## AMENDED MEMORANDUM AND ORDER

REGISTER, Senior District Judge.

In this action, brought pursuant to the provisions of 28 U.S.C.A., Section 2201, Plaintiff seeks a judgment declaring 1) that it has no obligation to defend Defendant Gibbons in a lawsuit against him by Intervening Defendant Lesselyoung, and 2) that it has no obligation to pay any judgment which might be rendered against Gibbons in the lawsuit against him by Lesselyoung. Diversity jurisdiction is established.

Defendant Gibbons is the named insured in an automobile liability policy issued by the Plaintiff. For purposes of this action, the parties have entered into a written stipulation, the pertinent features of which may be stated thusly: Gibbons and Lesselyoung traveled to the Defendant's farmstead in an automobile owned by Gibbons and described in the policy of insurance issued by the Plaintiff; at some point during the journey the vehicle was stopped, Gibbons dismounted from the vehicle, leaned against it and used the top of the automobile as a support to fire a deer rifle equipped with a telescopic sight; that while the vehicle was so stopped, Gibbons leaned against the right or passenger side, held the rifle in a normal position with his left hand under the forearm of the rifle and his left arm resting across the top of the automobile; Gibbons' purpose in using the top of the automobile as a gun rest was to steady the rifle while shooting at a target; while positioned as described, Gibbons fired two shots; the muzzle of the rifle apparently did not extend beyond the center of the roof of the vehicle when being fired; that as a result of one of the bullets striking the top of the automobile, said bullet was deflected and tore through the top of the car, causing fragments of either the bullet or car top to deflect downward, thereby seriously injuring the Intervening Defendant Lesselyoung, who was seated in the driver's seat.

Subsequently, in an action brought in the District Court of Adams County, North Dakota, the Defendant has been sued by the injured person, Lesselyoung. Under a non-waiver agreement executed by Gibbons, counsel for the Plaintiff interposed an answer to Lesselyoung's complaint, denying liability. This declaratory judgment action followed.

The applicable insuring agreement of the subject policy provides that the Plaintiff insurer will

"pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;

\* \* \* \* \*

arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury . . . and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

The sole question presented by this action is whether or not the injury sustained by Lesselyoung arose out of the "use" of the described vehicle, as that term is used in the subject policy of insurance.

The question has been thoroughly briefed, oral argument thereon was presented in open court on December 17, 1971, and the matter is finally submitted.

Plaintiff's position is that under the facts of this case, the automobile was being "used" as a gun-rest, and that therefore the accident and resulting injuries to Lesselyoung did not "arise out of the use" of the owned automobile within the terms of the policy. Plaintiff argues that the word "use", as used in the policy of insurance, contemplates a use of the automobile in its inherent nature as a vehicle, and cites substantial authority in support of such reasoning.

On the other hand, the Defendant and Intervening Defendant cite as their principal authority the 1960 case of Fidelity and Casualty Company of New York v. Lott et al., 273 F.2d 500 (5 Cir.), in which the factual situation was strikingly similar to that presented here. In *Lott* the Court simply held that "in the ordinary sense of the words Miller's death was 'caused by accident \* \* \* arising out of the \* \* \* use of the automobile' ". (p. 502) The Court thereafter went on to say: "But, appellant says, the automobile was being 'used' as a gun-rest and not as a vehicle. The obvious answer to this is that no such limitations were placed on the word 'use' by the insurance company in the preparation of its policy." Then, relying on Texas authority, the Court of Appeals for the Fifth Circuit concluded that "the words 'incident to and arising out of the use of a motor vehicle' are not restricted to occasions when the insured party was hurt either because of the running of the automobile or because of its standing after normal use."

From the stipulated facts and the reasonable inferences to be drawn therefrom, the applicable case law and rules of construction, and the arguments of counsel, we are satisfied that the controlling law concerning the construction of the subject policy is the law of the State of North Dakota.

Apparently the Supreme Court of North Dakota has not had occasion to pass upon the precise question involved in this case, for none has been cited to us and our independent research discloses none. However, there is some indication of what direction that Court would take in the 1961 case of Kadrmas v. Mudna, N.D., 107 N.W.2d 346. In *Kadrmas* the plaintiff was injured in a single car accident involving an automobile apparently owned by his mother, and covered by a policy of insurance in which she was the named insured. Plaintiff had been given permission to use the automobile, and prior to the accident he had been driving. However, some time prior to the accident, plaintiff advised his companions that he was going to sleep, and entered the back seat of the vehicle for that purpose. The

next thing he knew, he was regaining consciousness while lying in a ditch following the accident. The evidence disclosed that Mudna, the defendant, was driving the vehicle at the time of the accident, and he claimed to be an insured within the terms of the extended coverage clause. Under the facts in that case, the Supreme Court held that Mudna could be an insured within the terms of the policy only if the plaintiff, Kadrmas, could be said to be "using" the vehicle while Mudna was driving it. That Court then went on to hold that Kadrmas was *not* using the insured vehicle, within the meaning of the terms of the policy, at the time of the accident. At page 349, the Court states:

> "He (Kadrmas) was asleep in the back seat which he had entered not for the purpose of going or being taken anywhere, but for the purpose of sleeping until his companions were ready to leave, at which time they were to wake him up. The inference was that he would do the driving as he had been doing throughout the evening. It cannot be said that Clarence Kadrmas was using the car merely because he was in it when the accident happened. He entered the car for repose and not for transportation. *The use contemplated by the policy is use as a vehicle, not a bed.* (Emphasis supplied.)

In a trial court memorandum opinion issued November 3, 1971, Judge Redetzke, a Judge of the District Court, First Judicial District, State of North Dakota, held on facts very similar to those present in the instant case:

> "It is the conclusion of the court from the decided cases that the causal relation or connection between the accident or injury and the ownership, maintenance or use of a vehicle in order for the accident or injury to come within the meaning of the phrase 'arising or resulting out of the ownership, maintenance, or use of a vehicle' must be one which arises reasonably out of the inherent nature of the automobile as such." Norgaard v. Nodak

Mutual Insurance Company, County of Cass, First Judicial District, State of North Dakota, November 3, 1971.

In *Norgaard* the plaintiff (insured) stopped his automobile on the side of a road, stepped out from the driver's seat, leaned across the top of the vehicle with a .22 calibre rifle—using the top of the vehicle as a gun-rest—and fired at a target. At that precise moment, a companion stepped out and up from the opposite side of the vehicle, was struck in the head by the bullet, and died.

We recognize, of course, that the *Norgaard* decision is a trial court holding and not finally binding. However, we also recognize that Judge Redetzke is an able, experienced trial judge in the State of North Dakota, and consequently accord his opinion appreciable weight.

Defendants in this case attempt to distinguish those cases (including *Norgaard*) cited by the Plaintiff in support of its position of non-coverage, by pointing out that in this case the bullet actually penetrated the vehicle, causing the bullet to fragment and it, together with the pieces of the vehicle roof, were deflected downward into the head and neck of Lesselyoung, causing his injuries, whereas in those cases cited by Plaintiff, such was not the situation. We believe this to be a distinction without a difference, insofar as an interpretation of the applicable policy terms is involved.

On a prior occasion, wherein this Court was called upon to interpret a provision of North Dakota's nonresident motorist statute, we held:

> "Clearly, Section 39–01–11 does not require that the vehicle itself must have caused the injury or loss, but only that its 'use' (or operation) must have spawned the accident. Notwithstanding, this Court is of the opinion that there must be *some* relation of cause and effect between the 'use' *of the vehicle* and the Plaintiff's damage. I am unable to perceive any direct causal relationship between the 'use' of *Defendant's truck* and the cause of

action alleged in Plaintiff's complaint." Langness v. Fernstrom Storage & 'Van Company, 253 F.Supp. 879, 881 (D.N.D., S.E.Div.1966).

In *Langness* the plaintiff was injured while assisting in the unloading process of a heavy piece of machinery from defendant's truck. The central issue was whether or not the plaintiff's injuries and damages "grew out of the use" of defendant's truck. We held that they did not.

Obviously, the facts in *Langness* bear no similarity to those present in the instant case. However, the interpretation of the word "use" was involved, and the discussion concerning that aspect of the matter has some relevance to the issue here before the Court.

The narrow question presented by this action never having been considered by the Supreme Court of North Dakota, a duty devolves upon us to predict or forecast what that Court would hold under the same or similar factual circumstances inherent here. See: Nugent v. General Insurance Co. of America, 253 F.2d 800 (8 Cir.). We conclude that that Court would follow the greater weight of authority and reasoning (See, e. g., *Appleman,* Insurance Law & Practice, Vol. 7, Sec. 4316, and in particular the 1971 pocket part, and Annot., 89 A. L.R.2d 150) and hold that upon the facts of this case, there is no insurance coverage. We hold that the word "use" as employed in the insuring clause hereinbefore quoted, does not cover or embrace the type of "use" urged in this case; that is, using a stopped vehicle for a gun-rest is not the type of "use" contemplated and covered by the policy in question. In essence, we interpret the word "use", as used in the policy, to mean a use of the vehicle as a vehicle, and nothing more.

With regard to a possible conflict of law issue being present in this matter, it is our understanding that the Defendant and Intervening Defendant contend that the law of the State of South Dakota controls, and that the same is contrary to the conclusion hereinbefore expressed. In this connection we note that no opinion of the Supreme Court of South Dakota, touching squarely on the point in issue, has been submitted to or found by this Court that would indicate the South Dakota Supreme Court would arrive at a different conclusion than that hereinbefore expressed. Among the important factors to be considered in reaching that conclusion are the following:

At all times material the insured Defendant was and now is a resident of Adams County, North Dakota; on the date of the accident and for several years prior thereto he was the owner of the automobile that was named and covered in the insurance policy here involved; the original insurance policy was sold to the Defendant insured by a representative of the Plaintiff at the Defendant's home in North Dakota—at which place Plaintiff's representative called upon the insured; earlier policies (that is, policies prior to the issuance of the one here involved) were also purchased by the insured from the Plaintiff as a result of the agent calling at the Defendant's farm home in North Dakota, although the policy here involved (a renewal of a former policy) was "ordered" from the agent at the agent's office in South Dakota; the policy here involved was a renewal of the same sort of policy previously issued to the insured; the policy here involved was delivered to the Defendant insured at the latter's home in North Dakota; the policy involved herein included, as a part thereof, a page entitled "CANCELLATION AMENDMENT—NORTH DAKOTA", containing specific provisions in accord with the statutes of the State of North Dakota; the form of policy used by Plaintiff in the States of North Dakota and South Dakota is the same (except that, as to North Dakota policies the page entitled "CANCELLATION AMENDMENT—NORTH DAKOTA", was made a part thereof); the vehicle insured was kept at and used from the residence of the insured in the State of

North Dakota, and was licensed in the State of North Dakota; and that all of the foregoing facts were known by Plaintiff prior to, and at all material times after the issuance of the policy here involved.

All the recited facts are stipulated, except the licensing of the motor vehicle in the State of North Dakota, and knowledge of all material facts by the Plaintiff. As to the North Dakota license, it is presumed that the law has been obeyed—and the North Dakota law requires such licensing, and, also, such licensing and knowledge of the Plaintiff as to all of the stated facts are reasonably and necessarily inferred from the stipulated facts.

Several tests have been applied to determine what law controls in resolving questions relating to the construction of an insurance contract. In Emerson v. Carolina Casualty Insurance Co., 206 F. 2d 13 (8 Cir. 1953), the Court held that where the insured was a resident of Arkansas at the time of the issuance of the policy, and the policy was delivered in Arkansas, questions relating to construction of the policy were to be determined in accordance with applicable Arkansas law. Here, the insured was a resident of North Dakota, and the policy was delivered to him in North Dakota.

If "intent of the parties" is deemed determinative, it would seem that the only reasonable inferences and deductions that can be made, are that the parties intended North Dakota law to control. All previous policies were concededly North Dakota policies—including the policy of which the policy in question is a renewal. It was issued to insure a North Dakota resident, to cover an automobile located and licensed in the State of North Dakota, and owned and used by a permanent resident of North Dakota; and it contained, as a part thereof, the specific "CANCELLATION AMENDMENT—NORTH DAKOTA" containing provisions in compliance with the laws of North Dakota, and which contained in its heading, in bold face type, the words "NORTH DAKOTA."

If the so-called "center of gravity" theory is applied, there can be no question but that the applicable law is that of the State of North Dakota. See: Leflar, Conflict of Laws, Sections 123 and 125. From Section 125, we quote in part, from the author's statements:

"The new approach has been called the 'center of gravity' or 'the grouping of contacts' theory. Its effect in contracts cases, as in torts cases, is to apply the law of the place 'which has the most significant contacts with the matter in dispute.'"

Virtually all of the important facts, and all of "the most significant contacts with the matter in dispute" related to and occurred in the State of North Dakota, and the laws of that State should apply.

However, if this Court is in error on this conflict of laws question, and it should be held that the laws of South Dakota are applicable, it is our opinion that the Supreme Court of South Dakota would hold, under the same or similar factual circumstances here presented, in accord with the previously expressed opinion of this Court —that the word "use" as employed in the insuring clause of the policy here involved does not cover the type of "use" urged by the Defendant and Intervening Defendant—that using a stopped vehicle for a gun-rest is not the type of "use" contemplated and covered by the policy in question.

Counsel for the Plaintiff will forthwith prepare and submit appropriate form of judgment in conformity herewith.

This memorandum and order is deemed to fulfill the requirements of Rule 52(a) of the Federal Rules of Civil Procedure.