**Christina MERIC, Respondent,**

v.

**MID–CENTURY INSURANCE CO., Appellant.**

**No. C6–83–1460.**

Court of Appeals of Minnesota.

Feb. 1, 1984.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Eric B. Nilsson, Briggs & Morgan, P.A., St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

PARKER, Judge.

Luis Meric-Acevedo's widow was denied basic economic loss benefits by her no-fault insurance carrier. She filed this suit to compel the insurance company to pay those benefits. The parties filed cross motions for summary judgment. The municipal court granted Ms. Meric's motion in an August 8, 1983 order. The insurance company appeals.

## FACTS

Luis Meric-Acevedo, a Minnesota resident, and two other members of the band "Bread, Cheese and Wine" drove to Winnipeg, Canada to perform. They arrived in Winnipeg and stopped to buy beer at the Montcalm Motor Hotel before joining the rest of the band. The two band members with Mr. Meric-Acevedo got out of the van to buy the beer. Mr. Meric-Acevedo stayed with the van and waited for them.

At the same time that the band members were getting their beer, Roy Hoffman was robbing the motor hotel. Seeing Mr. Meric-Acevedo's van slowly rolling up to the motor hotel entrance, Mr. Hoffman saw his escape. He walked up to the van, opened the door, pointed his gun and ordered Mr. Meric-Acevedo out of the van. A struggle ensued. The gun fired. Mr. Meric-Acevedo fell to the pavement mortally wounded; the van, still in gear, rolled away, pursued by the robber. The robber then fled in the van.

Ms. Meric, the decedent's wife, filed for basic economic loss benefits as a survivor under their Minnesota no-fault automobile insurance plan issued by Mid-Century Insurance Company. Mid-Century denied the claim because, in their view, his death did not arise out of the maintenance or use of a motor vehicle.

## ISSUE

Did Mr. Meric-Acevedo's death arise out of the use of an automobile, thereby allowing his widow to collect no-fault insurance benefits?

## ANALYSIS

Eligibility for basic economic benefits under Minnesota's no-fault insurance plan is governed by the "Right to Benefits" section of the statute:

> If the accident causing injury occurs outside this state in the United States, United States possessions, or Canada, the following persons and their surviving dependents suffering loss from injury arising out of maintenance or use of a motor vehicle have a right to basic economic loss benefits:
>
> (1) Insureds * * *

Minn.Stat. § 65B.46(2) (1982).

Generally, "use" has a broader meaning than driving or operating an automobile. Uniform Motor Vehicle Accident Reparations Act § 1(a)(6) comment (1982). The injury must, however, be causally connected with the use of the vehicle for transportation purposes. *Haagenson v. National Farmers Union Property and Cas. Co.*, 277 N.W.2d 648 (Minn.1979). The connection required is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Tlougan v. Auto-Owners*

*Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981). As noted in *Holm v. Mutual Service Cas. Ins. Co.*, 261 N.W.2d 598 (Minn.1977), "the vehicle itself must be an *active* accessory" to the injury. *Id.* at 603 (quoting *National Mut. Cas. Co. v. Clark*, 193 Miss. 27, 40, 7 So.2d 800, 805 (1942)).

■ In *Holm*, a police officer chased a motorcyclist. To escape, the cyclist went up a steep hill and dismounted. The officer followed in his squad car, stopped at the top, and got out to arrest the cyclist. During the arrest, the cyclist was injured. He sued. The Minnesota Supreme Court refused to allow no-fault benefits because the use of the police car was unrelated to the cyclist's injuries, noting:

> Converse [the police officer] had completely left the vehicle before he administered the tortious battery. The police car had served only to transport him to the scene of the incident. The battery could as easily have occurred had Converse come upon the stationary motorcycle while on foot.

*Id.* at 603. The court cited cases, including *Kangas v. Aetna Cas. & Sur. Co.*, 64 Mich. App. 1, 235 N.W.2d 42 (1975), the primary case in a line of cases relied on by the appellant, which denied no-fault benefits to assault victims because:

> [i]n each of these decisions the acts of leaving the vehicle and inflicting a battery were viewed as events of independent significance which broke the causal link between the "use" of the vehicle and the injuries inflicted. And this was so in spite of the fact that in each instance the subject auto was used to transport the tortfeasor(s) to the scene of the incident. Read together, the cases fully support the general proposition that for an injury to "arise out of the use" of an automobile it must be causally related to the employment of the vehicle for transportation purposes. In the words of the *National Mutual* court, "the vehicle itself must be an *active* accessory" to the

injury sustained. (Italics supplied.) *National Mut. Cas. Co. v. Clark*, 193 Miss. 40, 7 So.2d 805.

*Holm*, 261 N.W.2d at 603 (Minn.1977). In the present case, the assault would not have occurred had not the robber wanted the van as transportation. Because Mr. Meric-Acevedo was using the vehicle and refused to surrender it, the robber shot Mr. Meric-Acevedo and stole the vehicle, using it for his attempted get-away. The assault would not have happened if Mr. Meric-Acevedo had been on foot. No act of independent significance broke the causal link between use as a vehicle and Mr. Meric-Acevedo's death; the van was, therefore, an active accessory in the death.

The appellant claims that no cases allow no-fault recovery for an assault related to a vehicle. Even in Michigan, however, where a closer causal connection is required than in Minnesota,[1] cases have allowed no-fault recovery for assaults. *Saunders v. Detroit Auto. Inter-Ins. Exchange*, 123 Mich. App. 570, 332 N.W.2d 613 (1983); *Mann v. Detroit Auto. Inter-Ins. Exchange*, 111 Mich.App. 637, 314 N.W.2d 719 (1981). In *Mann*, a plaintiff was injured when a rock was thrown at his car from a freeway overpass. The court found a causal link between the assault and driving the car: "if the plaintiff had not been driving his automobile, he would not have been assaulted. Injuries sustained as a result of an assault, therefore, arise out of the operation and use of the motor vehicle as a motor vehicle." *Id.* 314 N.W.2d at 720. The same can be said for the assault on Mr. Meric-Acevedo.

## DECISION

Mr. Meric-Acevedo's death resulted from the use of his van as a vehicle. He was shot because the robber wanted to commandeer the van. Had he not been in the van, he would not have been shot. The

---

1. Michigan requires that the injury must be "foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." *Kangas v. Aetna Cas. & Sur. Co.*, 64 Mich.App. 1, 17, 235 N.W.2d 42, 50 (1975).

no-fault act applies and basic economic loss benefits are due his widow.

Affirmed.

SEDGWICK, J., took no part in the consideration or decision of this case.