**FIRE & CASUALTY INSURANCE COMPANY OF CONNECTICUT, Appellant,**

v.

**ILLINOIS FARMERS INSURANCE COMPANY, Respondent.**

No. C3–84–227.

Court of Appeals of Minnesota.

Aug. 7, 1984.

James T. Martin, Gislason & Martin, P.A., Edina, for appellant.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Heard, considered, and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

WOZNIAK, Judge.

This is a dispute between the homeowner's insurance carrier and the automobile

insurance carrier to determine liability for damages suffered. The homeowner's insurance carrier filed this declaratory judgment action to determine whether injuries sustained in the accident arose out of the maintenance or use of a motor vehicle. Following cross motions for summary judgment, the trial court determined that the accident did not arise out of the maintenance and use of a vehicle and dismissed the complaint. The homeowner's insurance carrier appeals. We affirm.

## FACTS

In November of 1981, Michael Mattis, Tim Morehouse, and their dog went pheasant hunting in northern Iowa. While driving down a gravel road, they saw pheasants run into a corn field. They drove to the next farm house to ask if they could hunt in the field and received permission.

Morehouse and Mattis hurriedly took their guns from the car. Mattis pulled his gun from the back seat at the same time that Morehouse was pulling his out on the other side of the car. Mattis, with the gun half unzipped from its case, decided to chamber a shell. While the barrel was half in the car, the gun fired, wounding Morehouse. Mattis testified that the safety was on when the gun was placed in the car, but off when he took it out of the car. He thought the dog might have knocked the safety to the off position while riding in the back of the car. The gun is in good working order.

## ISSUE

Was the accident the result of the maintenance or use of a motor vehicle?

## ANALYSIS

■ Under Minnesota procedure, summary judgment is proper when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. The parties do not dispute the facts, but merely the application of the law to those facts. A summary judgment was proper.

Generally, "use" of a motor vehicle has a broader meaning than driving or operating the vehicle. The comments to the Uniform Motor Vehicle Accident Reparations Act, the model for Minnesota's No-Fault Act, defines "use":

While "use" has a broader meaning than operating or driving a vehicle, the requirement that use of the motor vehicle be "as a motor vehicle" qualifies the term so that both the tort exemption and the availability of basic reparation benefits are more nearly limited to activities whose costs should be allocated to motoring as part of an automobile insurance package.

Unif. Motor Vehicle Accident Reparations Act § 1(a)(6) comment (1972).

■ A causal connection between the injury and the use of the vehicle must be shown. This causal relationship is, however, something less than proximate cause in a legal sense. The injury must be "a natural and reasonable incident or consequence of the use of the vehicle." *Haagenson v. National Farmers Union Property & Cas. Co.*, 277 N.W.2d 648, 652 (Minn.1979) (slipping down an embankment and being electrocuted while trying to enter parked vehicle after investigating an accident scene—"use" of vehicle). The vehicle must be more than the mere situs of the accident; it must be an active accessory to the injury. *Tlougan v. Auto-Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981) (children burned while playing with car cigarette lighter while waiting for mother to drive to the store—mere situs). The "active accessory" language was adopted as an attempt at further clarification. *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 920 (Minn.1983). "Active accessory" does not mean that vehicle actively caused the damage, but that the accident happened because the vehicle's use was actively connected with the injury. *See Meric v. Mid-*

*Century Ins. Co.*, 343 N.W.2d 688 (Minn. Ct.App.1984) (driver shot by robber in taking van as getaway car—"use" of vehicle).

 The homeowner's insurance carrier argues that since the accident happened while the car was being unloaded, the accident should be considered the result of the maintenance or use of an automobile. The mere fact that a vehicle is being unloaded does not in itself make the accident compensable under the No-Fault Act. *Galle v. Excalibur Ins. Co.*, 317 N.W.2d 368, 370 (Minn.1982). The injured person must be occupying, entering, or alighting from the vehicle and the injury must arise out of the "maintenance or use of a motor vehicle as a vehicle." Minn.Stat. § 65B.43(3) (1982); *Petrick v. Transport Ins. Co.*, 343 N.W.2d 876, 878 (Minn.Ct.App.1984).

 This accident was a typical hunting accident: Mattis carelessly loaded his gun while it was pointed at Morehouse. The fact that it happened in the vicinity of their vehicle was chance. Unlike *Meric* where the driver was shot because he stood in the way of a robber using the van as a vehicle, Morehouse was shot because Mattis was in a hurry to start hunting, not because of any use of the vehicle as a vehicle. The vehicle was the mere situs of the accident. *See Farm Bur. Mut. Ins. Co. v. Crum & Forster Ins. Co.*, No. 6–78–188 (D.Minn. Aug. 1, 1979), *aff'd*, 618 F.2d 39 (8th Cir. 1980).

This court also notes that Mattis' loading of the gun with the barrel halfway in the car and pointed at Morehouse was extremely careless. Such acts are "events of independent significance which [break] the causal link between the 'use' of the vehicle and the injuries ...." *Holm v. Mutual Service Cas. Ins. Co.*, 261 N.W.2d 598, 603 (Minn.1977).

In the final analysis, this is not an accident "whose costs should be allocated to motoring as part of an automobile insurance package." *Galle*, 317 N.W.2d at 370. It was a typical hunting accident whose costs should be allocated through the general liability coverage of the homeowner's insurance package.

### DECISION

The accident did not arise out of the maintenance or use of a vehicle. It was not covered, therefore, under the automobile insurance nor did the homeowner's exclusion of injuries arising out of the maintenance or use of a vehicle apply.

Affirmed.