**CONTINENTAL WESTERN INSURANCE COMPANY, Respondent,**

v.

**Russell KLUG, et al., Appellants.**

No. C8–86–731.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Review Granted Dec. 23, 1986.

---

Theodore J. Smetak, Arthur, Chapman, Michaelson & McDonough, Minneapolis, for respondent.

Thomas F. Van Horn, St. Paul, for appellants.

Heard, considered, and decided by HUSPENI, PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from an order granting summary judgment. Respondent, Continental Western Insurance Company, denied Russell and Wendy Klug's claim for no-fault and uninsured motorist benefits. The Klugs had claimed coverage for injuries sustained by appellant, Russell Klug, when he was shot by another motorist while driving his car.

On October 2, 1985, respondent brought a declaratory judgment action. Respondent requested the trial court hold that appellants are not entitled to receive no-fault or uninsured motorist benefits under an automobile policy issued by respondent for any damages suffered by appellants as a result of the incident in question. On stipulated facts, appellants and respondent each moved for summary judgment in their favor.

On January 3, 1986, the court granted respondents' summary judgment motion, holding that Russell Klug's injury did not arise out of the maintenance or use of a motor vehicle and was not covered under the no-fault and uninsured motorist provisions. From that judgment this appeal arose. We affirm.

## FACTS

On August 1, 1985, appellant Russell Klug was driving home from work. He looked to his left and noticed that a car pulled along side of his car, approximately three to five feet away. He recognized the driver of the other car as Daniel Bahe, a co-worker. Bahe was steering the car with his left hand and was holding a shotgun with his right hand. Bahe pointed the shotgun at Klug. The gun barrel extended beyond the passenger side of Bahe's car through an open window.

To avoid being shot, Klug pulled the steering wheel sharply to the right, swerving onto the shoulder, and he simultaneously laid himself across the front seat. The only part of his body protruding above the top of the driver's door was his left arm, which was holding on to the steering wheel.

After he had heard a gunshot, Klug sat up and brought the car back into the right-hand lane. He was unaware that he had been hit. When Klug sped up in an attempt to get away from the other driver, he heard another shot.

Klug pulled into the left lane in front of Bahe. Bahe sped up and rammed Klug's vehicle from behind, damaging its rear end. Klug momentarily lost control, swerved to the right and slowed down. Bahe caught up to Klug's vehicle and attempted to overtake Klug. In an attempt to block Bahe's vehicle and stay in front of it, Klug drove back and forth across the highway.

As he approached an exit, Klug noticed that he had been shot and needed help. He pulled into the righthand lane, slammed on his brakes and pulled off onto the exit ramp. Bahe, unable to brake so quickly, drove past the exit. Klug's arm was injured by the buckshot fired from Bahe's gun. He claims no other injuries resulting from the incident.

The parties stipulated that Bahe, who was driving an uninsured vehicle, had intended to shoot appellant, but had done so as a direct result of mental illness.

The trial court granted respondent summary judgment on its declaratory judgment action, holding that Russell Klug's injury did not arise out of the "use" of a motor vehicle and thus Klug was not covered under the no-fault uninsured motorist provision of his automobile policy with respondent. The Klugs appeal.

## ISSUE

Did the shotgun injury, inflicted by one driver on another, constitute an injury arising out of the use of a motor vehicle for purposes of no-fault and uninsured motorist coverage?

## ANALYSIS

In discussing maintenance and use questions, the supreme court has held that "each case presenting such a question must, to a great degree, turn on the particular facts presented." *Associated Independent Dealers, Inc., v. Mutual Service Insurance Companies,* 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975).

Appellants claim that Klug's injury arose out of the use of a motor vehicle, and covered under the no-fault and uninsured motorist provisions of respondent's policy. The trial court found that the injury was not sufficiently related to the maintenance or use of a motor vehicle to be covered.

With respect to no-fault insurance, respondent's policy provides:

The company will pay, in accordance with the Minnesota no-fault automobile insurance act, to or on behalf of each eligible injured person, personal injury protection benefits for
   (a) medical expenses,
   (b) work loss,
   (c) essential services expenses,
   (d) funeral expenses, and
   (e) survivors' loss
incurred with respect to bodily injury sustained by an eligible injured person

caused by an accident arising out of the maintenance or use of a motor vehicle as a vehicle, or through being struck by a motorcycle.

The uninsured motorist provision of the policy states that:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
   1. Sustained by a covered person; and
   2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

The Minnesota No-Fault Act provides that " '[m]aintenance or use of a motor vehicle' means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it." Minn.Stat. § 65B.43 subd. 3 (1984).

The language "arising out of the use of a motor vehicle," as used in an insurance policy, requires a causal relationship or connection between the injury and the use of a vehicle. This relationship need not, however, be the proximate cause in the legal sense. It is sufficient that the injury is a natural, reasonable incident or consequence of the use of a motor vehicle. *Associated Independent Dealers v. Mutual Serv. Ins.,* 304 Minn. at 181, 229 N.W.2d at 518. In *Associated Independent Dealers,* the court held that fire caused by the use of acetylene equipment was not permanently attached to the van in which it was located and did not arise out of the ownership, maintenance or use of the insured motor vehicle. *Id.*

Although Klug's injury occurred within a motor vehicle, the motor vehicle involved in the injury must be more than the mere situs of the injury. *Brehm v. Illinois Farmers Insurance Co.,* 390 N.W.2d 475 (Minn.Ct.App.1986). The injury must be casually related to the employ-

ment of the vehicle for transportation purposes. *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648, 652 (Minn.1979).

Even the automobile's active participation in the injury does not necessarily mean that the injury arose out of the maintenance or use of the automobile. In *Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921 (Minn.1985), the mother of two minor children committed suicide by running the engine of her car while it was parked inside a closed garage. Some carbon monoxide leaked into the house, killing the two children. In an action brought by the children's father, the supreme court held that the children's deaths did not arise out of the maintenance or use of a motor vehicle because the car was not being used for transportation purposes. *Id.* at 923.

We find *Vodinelich* particularly instructive for purposes of analyzing what causal connection is needed between a vehicle's use and the claimed injury in order to find coverage. The exhaust system of a car is an essential component of a car's engine, and the production of carbon monoxide and other fumes from the running of a car's engine is a natural and expected consequence of a vehicle when it is started. Yet, the Minnesota Supreme Court found no coverage in *Vodinelich*. The Supreme Court stated:

> The requirement that coverage will exist only for injuries resulting from uses for transportation purposes is intended to limit an automobile insurance company's liability to those risks the policy was intended to insure against, that is, against risks associated with "motoring." *See* "Uniform Motor Vehicle Accident Reparations Act" 1(a)(6) comment (1982).

*Vodilenich* at 923.

The facts in this case then would seem to present an even stronger case for a finding of no coverage as it is not in dispute that neither Bahe's nor Klug's car came equipped with a firearm, and it is not in dispute that being struck by a bullet while riding in one's own car is not a natural and expected consequence of being in a car.

Also, it is not a natural and expected consequence of sitting in a car that someone else in another car would fire at you with a weapon. Lastly, the respondent insurance company in this case could no more reasonably be expected to have intended to insure against Klug's injuries than the automobile insurer in *Vodilenich* could have reasonably intended to insure against the injuries suffered there.

█ The use of a motor vehicle for transportation purposes alone may not satisfy the maintenance or use requirement. In *Tlougan v. Auto-Owners Ins. Co.*, 310 N.W.2d 116 (Minn.1981), the plaintiff was sitting inside a pickup truck, waiting to be driven to town. While waiting for her mother, the plaintiff, a 5–year–old child, lit her clothing on fire with matches she found on the pickup truck's dashboard. Although the court found that the plaintiff was using the pickup truck for transportation purposes at the time of the injury, it concluded that there was an insufficient causal connection between the injury and the use of the vehicle for transportation purposes.

The fact that an accident occurred while the injured party was on, in, or near an automobile is not of itself dispositive. *Barry v. Illinois Farmers Ins. Co.*, 386 N.W.2d 299, 301 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. June 30, 1986). The vehicle must be an *"active accessory"* to the injury sustained. *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598, 603 (Minn.1977). *See also Brehm*, 390 N.W.2d at 477.

In *Waseca Mutual Insurance Co. v. Noska*, 331 N.W.2d 917 (Minn.1983), the insured placed barrels containing hot ashes on a trailer pulled by his pickup truck. The increased air flow resulting from the motion of the pickup truck fanned the ashes, which fell to the side of the highway resulting in extensive fires and property damage. Holding that the fires arose out of the use of a motor vehicle, the supreme court found that the vehicle was an "active accessory" to the injury. The motor vehicle was a "contributing, indeed necessary, cause of the fire." *Id.* at 918. Similarly, to find

that the injury in this case arose out of maintenance or use of a motor vehicle, we must find that Bahe's vehicle was an "active accessory" to the injury.

Here, the question arises whether Bahe's use of the gun constituted an act of independent significance, breaking the causal link between the use of the vehicle and the injury. *See Fire & Casualty Insurance Company of Connecticut v. Illinois Farmers Insurance Company,* 352 N.W.2d 798, 799 (Minn.Ct.App.1984) (injury sustained by hunter when gun discharged as another hunter loaded it, while the gun was partially in the car, occurred due to an eagerness to start hunting, not because of any use of the vehicle as a vehicle).

■ The use of the vehicle as a gun rest also does not suffice to establish that an injury arose out of the use of an automobile. In a North Dakota case, a passenger in a stopped automobile was injured by a bullet fired from a gun resting on top of the automobile. The court construed "use" to mean use as a vehicle, not as a gun rest. *National Farmers Union Property and Casualty Co. v. Gibbons,* 338 F.Supp. 430 (D.N.D.1972). Minnesota has applied the theory set out in *Gibbons* to find that the death of an intoxicated, unconscious passenger, left in the insured's automobile for a night during temperatures of 20 degrees, did not result from the use of a motor vehicle for the purpose of an exclusionary clause in the insured's homeowner policy. "[T]he automobile was a mere instrument receptacle, or situs of the primary negligence of the insured." *Engeldinger v. State Automobile and Casualty Underwriters,* 306 Minn. 202, 236 N.W.2d 596, 600 (Minn.1975).

This court did find an intentionally inflicted gunshot to have resulted from the use of an automobile. However, the facts in that case differ substantially from this case and other cases interpreting maintenance or use. In *Meric v. Mid Century Insurance Co.,* 343 N.W.2d 688 (Minn.Ct. App.1984), the driver of an automobile was shot when he refused to relinquish his vehicle to a robber seeking a getaway car.

We held that the driver's injury was related to the use of a motor vehicle, as it was the actual use of the automobile that brought about the shooting.

Here, Bahe did not shoot Klug because Bahe wanted to use Klug's car. Bahe did not shoot Klug for any reason connected with either vehicle. There must be some connection between the use of the vehicle and the discharge of the firearm and the resulting injury greater than mere presence in the vehicle when the injury is inflicted or sustained. *See Bennet v. National Union Fire Ins. Co. of Pittsburg,* 170 Ga.App. 829, 318 S.E.2d 670 (1984) (victims who were riding in their automobile when shot by an individual outside the vehicle just happened to be in the car when the assailant came "gunning" for them, and the injury thus did not arise out of the maintenance or use of the vehicle); *Curtis v. Birch,* 114 Ill.App.3d 127, 69 Ill.Dec. 873 448 N.E.2d 591 (1 Dist.1983) (where an uninsured driver fired at another driver, the shooting was not related to the use of a vehicle, as it could just as easily have taken place had the assailant been on foot or on a bicycle).

Although Klug was pursued along the highway, was forced to take evasive action, and was, at one point, rammed by Bahe's vehicle, none of these acts produced Klug's injury.

After careful review of precedent, we find that neither Bahe's being in a car when he fired nor appellant's being in a car when he was struck by shotgun pellets is enough to find coverage.

Had the ramming of appellant's vehicle resulted in injury to appellant, both sides appear to agree the injury would have been covered. *See Nadeau v. Austin Mutual Insurance Co.,* 350 N.W.2d 368 (Minn. 1984). In *Nadeau,* the insured, a pedestrian, slipped and injured herself as she attempted to get out of the way of an automobile "fishtailing" down an icy street. The court found coverage because, "but for" the fact that the vehicle was driven toward her, the insured would not have retreated to her driveway, where she fell.

Klug was not, however, injured when his car was rammed, nor was he injured during his efforts to evade Bahe's attack. The sole injury which Klug received was the direct result of the shooting. Bahe's vehicle was the "mere instrument, receptacle, or situs" of Bahe's attack on appellant and appellant's car was the mere situs of the injury. *See Engeldinger,* 236 N.W.2d at 600. It was not an "active accessory" as required by *Holm,* 261 N.W.2d 598.

As we hold no coverage because appellant's injury did not arise out of the maintenance or use of an automobile, we need not reach the issue of whether the shooting was "accidental" within the terms of the policy.

## DECISION

The trial court properly found that appellant's gunshot injury did not arise out of the maintenance or use of an automobile.

Affirmed.

PARKER, J., dissent.

PARKER, Judge (dissenting).

I respectfully dissent and suggest that the majority opinion perpetuates what appears to be a confusion, of the two automobiles used, by the court below in granting summary judgment to respondent. In short, appellant Klug's automobile was the *situs;* the uninsured motorist Bahe's automobile was the *active accessory* of his assault.

It must be borne in mind that appellant was driving on TH #10 at 55 miles per hour when Bahe overtook him. A motor vehicle was "a contributing, indeed necessary, cause of the [assault]," to paraphrase *Waseca Mutual Insurance Co. v. Noska,* 331 N.W.2d 917 (Minn.1983), as quoted by the majority above.

Both no-fault and uninsured motorist coverage should be available to appellant if his bodily injuries arose out of the "use" of a motor vehicle, notwithstanding the intentional nature of Bahe's assault. *Meric v.*

*Mid Century Insurance Co.,* 343 N.W.2d 688 (Minn.Ct.App.1984).

I adopt, for the purposes of this dissent, the following passage from appellant's brief:

When reviewing Minnesota case law defining the term "use" of a motor vehicle, several facts concerning the present case should be kept in mind:

1. Daniel Bahe used his motor vehicle to pursue Russell Klug.

2. Without the use of his motor vehicle, Mr. Bahe would not have been able to overtake Mr. Klug.

3. Daniel Bahe used his motor vehicle to drive along side of Mr. Klug's motor vehicle so that the shots could be fired at point blank range.

4. Mr. Bahe used the door of his motor vehicle to steady the gun.

5. Mr. Bahe was actually steering his motor vehicle with his left hand while preparing to shoot, and while actually shooting at Mr. Klug.

6. Mr. Bahe used his motor vehicle so that even if the shot didn't kill Mr. Klug, the ensuing crash more than likely would have.

7. Mr. Bahe shot Mr. Klug while both motor vehicles were traveling on Highway 10.

8. Mr. Bahe used his motor vehicle in the continued pursuit of Mr. Klug for approximately two miles.

9. Mr. Bahe used his motor vehicle to ram the rear end of Mr. Klug's motor vehicle.

10. Mr. Bahe used his motor vehicle to escape.

11. Through the use of his motor vehicle, Mr. Bahe would have very likely been able to escape undetected, if Mr. Klug had been killed.

12. In summary, for approximately two miles Mr. Bahe pursued, overtook, shot from, rammed and eventually escaped through the use of a motor vehicle.

To state the issue simply, Mr. Klug's injury arose out of the "use" of Mr.

Bahe's motor vehicle if: (1) the Bahe vehicle was an active accessory to the injury; and (2) the use of the Bahe vehicle was for transportation purposes.

Both no-fault and uninsured coverages should apply if Bahe was using *his* auto for transportation purposes. The majority's analysis fails to recognize that *two* cars were involved, one the *situs* and the other the *means*. The matter having been submitted on cross-motions for summary judgment, I would reverse and order judgment for appellant.