**Donald W. EDWARDS, et al.,**
**Respondents,**

v.

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, Appellant.**

**No. C5–86–1254.**

Court of Appeals of Minnesota.

Dec. 30, 1986.

Review Denied March 13, 1987.

Thomas F. Van Horn, St. Paul, for respondents.

Robert W. Murnane, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Diane Edwards, an insured under a policy issued by appellant, State Farm Mutual Automobile Insurance Company (State Farm) was abducted, sexually assaulted and murdered. Respondents, her parents and brother, brought an action for a declaratory judgment seeking to recover personal injury protection benefits under Minnesota's No-Fault Insurance Act and uninsured motorist benefits under the insurance policy issued by appellant. The trial court granted respondents' motion for summary judgment and found they were entitled to receive both no-fault benefits and uninsured motorist benefits. On appeal, State Farm argues that a claim for benefits under the insurance policy is barred by the statute of limitations. State Farm also contends that Diane Edwards' death did not arise out of the operation, maintenance or use of a motor vehicle nor was her death caused by an accident as contemplated by the insurance policy. We reverse and remand.

## FACTS

On the evening of September 26, 1980, Joseph Ture was driving an uninsured 1970 Ford station wagon through West St. Paul when he observed Diane Edwards walking down the sidewalk. Ture had met Edwards previously, but she had refused to see him on a social basis. When Ture saw Edwards on this particular evening, he drove his car over the sidewalk so that his driver's door was alongside her. Ture left his car and briefly spoke to Edwards. Then he forced Edwards into the car and drove away.

Ture drove Edwards to a secluded area approximately sixty miles from where he

abducted her. While still inside the car Ture sexually assaulted and murdered Edwards. He then left her body in the isolated area and drove back to the Twin Cities. Two weeks later Ture took the car he had used to a junkyard and had it destroyed. Ture eventually was convicted of first degree murder and was sentenced to life imprisonment.

Respondent, Donald Edwards, is the holder of an insurance policy issued by State Farm. His daughter, Diane Edwards, was insured under the policy as a member of the household. The two provisions of the policy at issue read as follows:

**PERSONAL INJURY PROTECTION:** We will pay in accordance with the No-Fault Act for bodily injury to an insured caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle.

**UNINSURED MOTOR VEHICLE COVERAGE** * * * We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

On August 29, 1984, respondents' attorney sent a letter to State Farm, demanding payment of respondents' uninsured motorist benefits and making a formal written demand for arbitration pursuant to the terms and conditions of their policy. State Farm responded in November 1984, with a letter denying coverage under the policy and refusing to submit the matter to arbitration. Respondents then filed a declaratory judgment action, seeking a determination that they were entitled to the uninsured motorist benefits as well as to personal injury (no fault) benefits.

## ISSUES

1. Is respondents' claim for uninsured motorist benefits barred by the statute of limitations?

2. Did Diane Edwards' murder "arise out of the operation, maintenance or use of a motor vehicle" for the purposes of cover-age under the no-fault and uninsured motorist benefits provisions of respondents' insurance policy?

3. Was Diane Edwards' murder an "accident" for the purpose of coverage under the uninsured motorist benefits provision of respondents' insurance policy?

## ANALYSIS

### I.

In *Spira v. American Standard Insurance Co.*, 361 N.W.2d 454 (Minn.Ct.App.), *pet. for rev. denied,* (Minn. Mar. 29, 1985), this court determined that the six-year statute of limitations for contract actions applied to an uninsured motorist insurance claim because the liability arose from a contract. *Id.* at 456; Minn.Stat. § 541.05, subd. 1(1) (1984). We further held that "[i]n arbitration proceedings, the 6–year limitations statute does not begin to run until there has been both a demand and a refusal to arbitrate." *Spira,* 361 N.W.2d at 457. *See also O'Neill v. Illinois Farmers Insurance Co.*, 381 N.W.2d 439, 441 n. 3 (Minn.1986).

State Farm argues that *Spira* can be distinguished from this case because the accident in *Spira* occurred in Tennessee, presenting conflict of laws issues not present here. State Farm suggests that this court applied the six-year contract statute of limitations because the applicable statute of limitations for personal injury actions in Tennessee was only one year. The holding in *Spira* is based on no such rationale, and State Farm's attempt to distinguish the two cases is unconvincing. In the present case, the refusal to arbitrate occurred on November 17, 1984, and respondents' action was brought well within the six year limitation period that began to run on that date.

### II.

Under the terms of the insurance policy in this case, respondents are entitled to collect damages for bodily injury only if two criteria are met. The injury must be

"caused by accident" and must arise "out of the operation, maintenance or use of an uninsured motor vehicle." Appellant argues that neither criterion is present in this case.

Once again we are asked to determine whether an injury is sufficiently related to the "use" of a vehicle to invoke the benefits of an automobile insurance policy. Ultimately, the answer to this question turns, to a great degree, on the particular facts presented in each case. *Classified Insurance Corp. v. Vodinelich*, 368 N.W.2d 921, 923 (Minn.1985) (quoting *Associated Independent Dealers v. Mutual Service Insurance Co.*, 304 Minn. 179, 229 N.W.2d 516 (1975)). The Minnesota Supreme Court has, however, considered this issue in several cases and has developed guidelines for making such determinations.

In *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116 (Minn.1981) the supreme court indicated that:

> [t]here must be some connection between the injury and the use of the vehicle for transportation purposes. * * *
> This "connection" between use and injury is something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury. It is enough if "the injury is a natural and reasonable incident or consequence of the use of the vehicle."

*Id.* at 117 (quoting *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652 (Minn.1979)). In addition, "the vehicle itself must be an active accessory" in bringing about the injury. *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598, 603 (Minn.1977).

The fact that an injury occurs while the injured party is in a motor vehicle is not dispositive of the issue. Rather, coverage exists only for injuries resulting from the use of a motor vehicle for transportation purposes. *Vodinelich*, 368 N.W.2d at 923. The purpose of this restriction is:

> to limit an automobile insurance company's liability to those risks the policy was

intended to insure against, that is, against risks associated with "motoring." *Id.* We recognize that *Vodinelich* addressed the scope of auto liability insurance coverage while the present case addresses the scope of no-fault and uninsured motorist benefits. However, section 65B.42(1) of the Minnesota no-fault automobile insurance act states that one of the purposes of the act is to "relieve the severe economic distress of uncompensated victims of *automobile* accidents * * *." (Emphasis added.) Even under the broad coverage of this act there still must be a connection between use of the automobile and the accident.

We have carefully reviewed the facts of this case and must conclude that there is not a sufficient causal connection between Ture's use of his vehicle and Diane Edwards' injuries to invoke coverage under respondents' automobile insurance policy. The physical injuries Ture inflicted upon Diane Edwards were devastating and tragic, but they were not related to Ture's "use" of his motor vehicle. Ture could have accomplished the same end without the use of a motor vehicle. *See Holm*, 261 N.W.2d 598. The fact that the injuries were inflicted in the vehicle cannot by itself elevate the vehicle to the status of an active accessory to the injuries sustained by Diane Edwards.

Neither are we persuaded by the fact that Ture used the vehicle to transport himself and Edwards. The law requires a "connection" between the use of the vehicle for transportation and the injuries sustained. There is a connection between these two elements when the injuries arise from a risk associated with motoring. The risk of being a victim of a violent crime is unfortunately a risk associated with living in our society; it is not a risk associated with motoring.

Ture's violent acts in this case did not arise out of his or Diane Edwards' use of an automobile. Rather, Ture's violent acts constituted "events of independent significance which broke the causal link between the 'use' of the vehicle and the injuries

inflicted." *Holm*, 261 N.W.2d at 603. He did not require a vehicle to inflict those injuries. Diane Edwards' injuries were the result of Ture's violent actions and not the result of the use of his vehicle. *See Continental Western Insurance Co. v. Klug*, 394 N.W.2d 872 (Minn.Ct.App.1986); *Wieneke v. Home Mutual Insurance Co.*, 397 N.W.2d 597 (Minn.Ct.App.1986). The vehicle used by Ture was the situs of his offenses. There was no element of those offenses against Edwards which required use of an automobile or involved risks associated with motoring.

### III.

Appellant also argues that Diane Edwards' murder was not an "accident" within the scope of the uninsured motorist provision. Because we have found the injuries in this case did not arise from the use of a vehicle, we need not decide this issue. We note, however, that a majority of jurisdictions addressing the issue have found that the term "accident" should be viewed from the perspective of the victim. Under this rationale, the courts have universally held that intentionally inflicted injuries were "accidents" within the scope of uninsured motorist coverage. *See Country Companies v. Bourbon by Bourbon*, 122 Ill. App.3d 1061, 78 Ill.Dec. 407, 462 N.E.2d 526 (1984); *Redden v. Doe*, 357 So.2d 632 (La.Ct.App.1978); *Sciascia v. American Insurance Co.*, 183 N.J.Super. 352, 443 A.2d 1118 (N.J.Super.Ct.Law Div.1982), *aff'd* 189 N.J.Super. 236, 459 A.2d 1198 (N.J.Super.Ct.App.Div.1983).

Also in *Meric v. Mid-Century Insurance Co.*, 343 N.W.2d 688 (Minn.Ct.App.1984) this court allowed no-fault recovery under Minn.Stat. § 65B.46 (1982), for an assault related to a vehicle. *Id.* at 690. The issue of whether the assault qualified as an "accident" was not directly addressed in *Meric*. We note, however, that section 65B.46 provides:

> If the accident causing injury occurs outside this state in the United States, United States possessions, or Canada, the following persons and their surviving dependents suffering loss from injury arising out of maintenance or use of a motor vehicle have a right to basic economic loss benefits[.]

Under this statute the *Meric* court would have had to find that the assault was an "accident causing injury" in order to conclude the statute provided coverage. Consistent with *Meric*, we agree with the dissent's implied recognition that the murder of Diane Edwards was an "accident" for purposes of uninsured motorist and personal injury coverage. Such a determination recognizes that while an intentional tortfeasor may be uninsured, or may be denied the protection of his third party liability coverage because of an exclusionary clause, the consequences befalling that intentional tortfeasor should not be transferred to the injured person who subsequently looks to his or her own insurer for first party coverage.

### DECISION

Respondents' claim for benefits under their insurance policy is not barred by the statute of limitations. The injuries sustained by Diane Edwards did not come within the scope of respondents' uninsured motorist and personal injury protection coverage. Both parties brought motions for summary judgment in this case. Therefore, on remand judgment should be entered for appellant.

Reversed and remanded.

POPOVICH, C.J., concurs specially.

PARKER, J., dissents.

POPOVICH, Chief Judge (concurring specially).

I concur in the result, reversing and remanding.

Consistent with my special concurrence in *Wieneke v. Home Mutual Insurance Company*, 397 N.W.2d 597 (Minn.Ct.App. 1986), I would also hold that Diane Edwards' murder was not an "accident" within the scope of the policy provision.

PARKER, Judge (dissenting).

I respectfully dissent. I would hold that the accident did arise out of the operation, maintenance or use of a motor vehicle, and would affirm.

This court has previously stated that "[a]ctive accessory does not mean that [the] vehicle actively caused the damage, but that the accident happened because the vehicle's use was actively connected with the injury." *Fire & Casualty Insurance Co. of Connecticut v. Illinois Farmers Ins. Co.,* 352 N.W.2d 798, 799 (Minn.Ct. App.1984). When determining whether the motor vehicle was an "active accessory" in bringing about an injury, the court must look at the circumstances from beginning to end. *Progressive Casualty Insurance Co. v. Hoekman,* 359 N.W.2d 685, 687 (Minn.Ct.App.1984). Such an analysis in this case leads to the conclusion that Joseph Ture's automobile was actively connected with Diane Edwards' rape and murder.

Ture was using his automobile to find a victim from the time he left his home on the night of the murder. He first used the car as an active accessory in terrorizing Tomi Willems by following her as she drove away from a local convenience store, bumping her car from behind to "get her attention," and attempting to force his way into her car. When Ture later spotted Diane Edwards standing on the sidewalk, he used his car to block her path. He then forced her into the car, where he confined her with the use of a rope and towel that were inside. Ture transported Edwards some 60 miles in his car. When asked why he drove to the distant, secluded area, Ture responded, "[s]o I could have sex with Diane." This illustrates that Ture would not have raped and killed his victim had he not first been able to transport her to a secluded area.

Once he reached his destination, Ture raped Diane Edwards and killed her with a knife that had been stored inside the car. Both the rape and the murder occurred inside the car. After leaving her body in the woods, Ture used his car to leave the scene of the murder. Because he could have been incriminated by the blood in the car, Ture subsequently had the car destroyed at a junkyard.

Given these facts, it seems thoroughly established that the station wagon was an active, indeed necessary, accessory to Diane Edwards' abduction, rape and murder. Ture's own statements indicate that he would not have committed the crimes without the vehicle. Looking at the circumstances from beginning to end, as required under *Hoekman,* the murder of Diane Edwards was merely the tragic culmination of a continuous series of crimes that Joseph Ture perpetrated that night, and Ture's car played an active role in those crimes.

The majority cites *Classified Insurance Co. v. Vodinelich,* 368 N.W.2d 921 (Minn. 1985), for the proposition that coverage should exist only for risks "associated with motoring." This reliance is misplaced. In *Vodinelich,* auto liability insurance coverage was at issue, whereas the coverage at issue here is no-fault and uninsured motorist benefits. Automobile liability insurance, essentially designed to indemnify the tortfeasor for liability caused by his own fault, may well be intended to cover only those risks associated with motoring; however, the same is not true of no-fault or uninsured coverage, which are based on a statute mandating broad first-party coverage. *See* Minn.Stat. §§ 65B.41–.71 (1984).

If no-fault coverage were limited to risks associated with motoring, the supreme court would not have granted coverage in *Nadeau v. Austin Mutual Insurance Co.,* 350 N.W.2d 368 (Minn.1984). In that case a pedestrian was injured when she slipped while avoiding an oncoming car that was "fishtailing" down an icy road. The pedestrian was not "motoring" at the time of the accident; in fact, she did not even have any contact with the vehicle at issue. The court nevertheless found coverage, holding that the use of the vehicle was a "necessary and contributing cause" of the victim's injury. *Id.* at 371. *Nadeau* indicates that no-fault recovery may be found when the damage is caused by risks associated

with "anyone's motoring," not necessarily the claimant's motoring, as the majority here implies.

We must keep in mind the purpose of no-fault automobile insurance, which is to provide broad coverage. *See* Minn.Stat. § 65B.42(1) (1984) (the No-Fault Act was adopted to "relieve the severe economic distress of uncompensated victims of automobile accidents"). Thus, the courts have not hesitated to strike down policy exclusions which attempt to limit coverage in derogation of the purposes of the No-Fault Act. *See Safeco Insurance Cos. v. Diaz*, 385 N.W.2d 845, 849 (Minn.Ct.App.1986) (exclusions from coverage may be inconsistent with the purposes of the No-Fault Act); *Maher v. All Nation Insurance Co.*, 340 N.W.2d 675, 680 (Minn.Ct.App.1983) ("Policy exclusions which attempt to prevent the coverage from following the person are inconsistent with the purposes of the Minnesota No Fault Act"). Similar policy considerations apply to uninsured and underinsured motorist insurance. *See Maher*, 340 N.W.2d at 680.

Finally, *Wieneke* is distinguishable from this case. In *Wieneke* there was an act of intervening independent significance. The tortfeasor left his car, walked over to the victim, committed the assault, and then returned to his car. The assault was completely independent of the tortfeasor's use of the auto, and therefore the case was controlled by *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598 (Minn.1977) (automobile liability insurance coverage not found where tortfeasor left his car and subsequently injured claimant in unrelated act). In contrast, the injuries here could not have occurred had Ture not had access to and use of his automobile. I would find coverage in this case.