**Marjorie Hugo PETERSON,
Respondent,**

v.

**AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Appellant.**

**No. C7-87-1539.**

Court of Appeals of Minnesota.

Jan. 12, 1988.

Review Denied March 30, 1988.

Jerome B. Abrams, Daniel J. Roth, Austin & Roth, Minneapolis, for respondent.

Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Chtd., Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment declaring an insurance company liable for payment of no-fault benefits. The insurer contends the insured's spouse was not covered by the policy, that the injuries did not occur while the spouse was occupying the vehicle, and that the injuries did not arise out of the use of a motor vehicle. We reverse.

## FACTS

In July 1982 respondent Marjorie Peterson's husband, Thomas Peterson, drove his wife's car into a Wisconsin roadside rest area and asked directions from a group of teenagers. After deflating and slashing the tires on the Peterson car, the teenagers forced Thomas into an assailant's car and drove several miles from the rest area where they strangled Thomas and threw his body into a nearby stream. The assailants were convicted of various crimes in connection with the abduction and murder.

Marjorie Peterson submitted a claim for no-fault survivors' benefits under her automobile insurance policy with American Family Mutual Insurance Company (American). American denied coverage claiming Peterson's policy did not provide coverage for "relatives" entitled to personal injury protection benefits under other policies. It also claimed Thomas was not injured while "occupying" a motor vehicle and asserted Thomas' injuries did not arise out of the use of a motor vehicle.

The district court granted partial summary judgment in favor of Peterson on the coverage question concluding the policy provision excluding persons covered under other policies created "an absurd result" when applied to married persons living in the same household. The court opined that the exclusion provision was void as against public policy because the provision purported to preclude stacking of no-fault coverage for which separate premiums had been paid and concluded Thomas must be deemed an insured person under his wife's policy with American. The court noted that Minnesota law requires insurers to

provide basic economic benefits for all losses resulting from injuries arising out of the maintenance or use of motor vehicles and therefore concluded American's exclusionary provision is void because it only covers persons who are injured while "occupying" motor vehicles.

The court reasoned that the necessary causal connection between the use of the car and Thomas' injuries existed "solely from the fact that [Thomas] stopped at a rest stop" designed, built and maintained for the convenience of highway travelers. The court concluded Thomas' murder was "at least a foreseeable incident" which occurred because Thomas was driving the car and stopped at the rest area.

The district court granted judgment in Peterson's favor for $10,000 in stipulated damages and American appeals.

### ISSUES

1. Did the district court err by concluding the decedent's injuries arose out of the use of a motor vehicle?

2. Did the district court err by concluding the policy provisions excluding the appellant's spouse from coverage are against public policy and therefore void?

### ANALYSIS

The parties dispute only the district court's interpretation of the insurance policy language and the court's application of the law. Accordingly, this court need not defer to the trial court and "may determine whether the trial court properly interpreted and applied the law to the facts presented." *Associated Independent Dealers, Inc. v. Mutual Service Insurance Cos.*, 304 Minn. 179, 183–84, 229 N.W.2d 516, 519 (1975) (footnote omitted).

### 1. "Use" of a Motor Vehicle

American agreed to provide Peterson with personal injury protection benefits for funeral expenses and survivors' loss

> incurred for bodily injury to: * * * an eligible injured person *caused by an accident due to the maintenance or use of a motor vehicle as a vehicle.*

(emphasis added). *See* Minn.Stat. § 65B.44, subd. 1 (1980).

> "Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle *as a vehicle*, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it.

*Id.* § 65B.43, subd. 3 (emphasis added).

■ In addressing whether injuries arose out of the "use" of a motor vehicle, this court must consider three general issues: (1) whether the motor vehicle was an "active accessory" in causing the injury; (2) whether an act of independent significance occurred breaking the causal link between "use" of the motor vehicle and the injuries; and (3) whether the injuries resulted from use of the vehicle for transportation purposes. *See Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876, 877–878 slip op. at 3–4 (Minn.1987).

■ Although the Peterson car transported Thomas to the scene of the incident, the car was stopped when Thomas was seized. Thomas' injuries were inflicted outside of the car and several miles from the rest area. Under the circumstances, the Peterson car was not "an 'active accessory' of the injury"; the car was nothing more than the situs of the abduction. *See Tlougan v. Auto–Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn.1981). The assailants' acts were directed at Thomas personally and were not intended to gain use of the car. *Cf. Meric v. Mid–Century Insurance Co.*, 343 N.W.2d 688, 690 (Minn.Ct. App.1984) (a driver was shot by a robber as the driver drove his van into a hotel entrance; "the assault would not have occurred had not the robber wanted the van as transportation").

This court already has held that injuries and death resulting from an assault which occurred in an automobile were not covered by no-fault and uninsured motorist insurance when there was no connection between the assault and the use of the vehicle for transportation purposes.

The law requires a "connection" between the use of the vehicle for transpor-

tation and the injuries sustained. There is a connection between these two elements when the injuries arise from a risk associated with motoring. *The risk of being a victim of a violent crime is unfortunately a risk associated with living in our society; it is not a risk associated with motoring.*

*Edwards v. State Farm Mutual Automobile Insurance Co.,* 399 N.W.2d 95, 98 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Mar. 13, 1987) (emphasis added). The abduction which resulted in Thomas' murder "is not a risk associated with motoring" and the abduction and violent assault "constituted 'events of independent significance which broke the causal link between the "use" of the vehicle and the injuries inflicted.' " *See id.* at 98–99.

Since the Peterson car was not an "active accessory" in causing Thomas' injuries, the abduction was an act of independent significance which broke any causal link between the use of the car and Thomas' injuries, and the injuries did not result from use of the Peterson car for transportation purposes, Thomas' injuries and death did not arise out of the "use" of the Peterson car. Accordingly, American is not liable for payment of personal injury protection benefits.

### 2. Policy Exclusions

Since we conclude Thomas' injuries are not injuries for which American must pay personal injury protection benefits because the injuries did not arise out of the "use" of a motor vehicle, we need not determine whether the district court erred by declaring American's policy exclusion provisions void as against public policy.

### DECISION

The abduction and murder of the appellant's spouse were not risks associated with motoring, and his injuries did not arise out of the use of a motor vehicle.

Reversed.