Joe C. and Claudia LINDSEY,
Respondents,

v.

Kerry Alan STURM, Respondent,

Larkstur, Appellant,

Jan Bennett, Respondent.

No. C4–88–2206.

Court of Appeals of Minnesota.

March 7, 1989.

Review Denied May 3, 1989.

Alan R. Nettles, Meyer, Njus, Johnson & Nettles, Minneapolis, for Joe C. and Claudia Lindsey, respondents.

Scott Wilson, St. Paul, for Kerry Alan Sturm, respondent.

Louise A. Dovre, Rider, Bennett, Egan & Arundel, Minneapolis, for Larkstur, appellant.

James H. Leviton, Minneapolis, for Jan Bennett, respondent.

Heard, considered and decided by PARKER, P.J., and SCHUMACHER and SCHULTZ,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

PARKER, Judge.

This appeal arises from the denial of a summary judgment motion by appellant Larkstur Engineering and Supply, Inc. (Larkstur). Pursuant to its denial of the motion, under Minn.R.Civ.App.P. 103.03(h), the trial court certified to this court the question of whether Larkstur's automobile insurance policy affords coverage under its "use" provision for injuries resulting from an argument about the parked position of the Larkstur vehicle. We reverse.

## FACTS

Late on the night of March 20, 1987, respondents Joe and Claudia Lindsey returned to their home in separate cars and found access to their garage blocked by Larkstur's vehicle. Kerry Sturm, a Larkstur employee and the son of the owner, had permission to use the vehicle for personal matters after running some business errands. He had driven to his girlfriend's house, which was next to the Lindsey home, and parked the car in the common driveway to the garages. Sturm and his girlfriend, Jan Bennett, went out with another couple for the evening in Bennett's car.

The Lindseys attempted to get someone in Bennett's house to move the car, but no one was home. Believing that Bennett and her friends had left for the weekend, the Lindseys called a tow truck. Before the tow truck arrived, Sturm, Bennett and their friends pulled into the alley, which was now blocked by the Lindseys' cars.

An argument ensued regarding the parked position of the Larkstur vehicle. When Claudia Lindsey told Sturm that a tow truck had been summoned, Sturm, who was quite intoxicated, became verbally abusive and poked her in the chest. Joe Lindsey separated Sturm from his wife. Sturm became angrier and threatened to use his car to "ram" the Lindseys' car which was blocking his way. Without starting it, Sturm managed to move the car backward a short distance. The vehicle did not touch the Lindseys or their cars.

When he was restrained from getting into his car by one of his friends, Sturm broke away and grappled with Joe Lindsey. Sturm claims that Lindsey was moving toward him "aggressively" when Sturm threw one punch, striking Joe Lindsey in the eye. Sturm then apologized and the parties moved their cars.

The punch in the eye caused massive hemmorhaging and retinal damage. As a result of the incident, Joe Lindsey has suffered a "choroidal rupture" of his left eye and is legally blind in that eye. Surgery and laser treatment have not improved his vision, and his physician does not anticipate that the condition will ever improve.

The Lindseys commenced an action against Larkstur on the ground that Joe Lindsey's injuries arose "out of the ownership, maintenance, operation or use" of the Larkstur automobile. Larkstur's insurance policy provides that the insurance company

will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

Larkstur moved for summary judgment, seeking dismissal of all claims for failure to state a claim upon which relief may be granted. The trial court denied the motion, holding that Joe Lindsey's injury arose out of the use of the Larkstur vehicle. The court concluded, however, that the question was extremely close and justifiably questioned by counsel because of the many cases addressing and surrounding this issue. The trial court then certified the question to this court as important and doubtful.

## ISSUE

Does Larkstur's automobile insurance policy afford coverage under its "use" provision for injuries resulting from an argument over the parked position of the Larkstur vehicle?

## DISCUSSION

■ The legal issue of whether an accident arises out of the use or maintenance

of an automobile is a recurring issue which defies a simple test. *Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876, 877 (Minn.1987). Each case involving this question must, to a great degree, turn on the particular facts presented. *Associated Independent Dealers, Inc. v. Mutual Service Insurance Companies*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975).

The Minnesota Supreme Court in *Klug* set forth three general factors a court must consider in addressing the issue: (1) the extent of causation between the automobile and the injury; (2) whether an act of independent significance occurred, breaking the causal link between "use" of the vehicle and the injuries inflicted; and (3) what type of "use" of the automobile was involved. *Klug*, 415 N.W.2d at 878.

Applying the *Klug* test to the facts of this case, we need not go further than the second prong, for we find that Sturm's battery was an act of independent significance that broke the causal connection between the automobile and the injury. It is a fundamental principle of tort law that an intentional or criminal act, such as a battery, will break the causal chain because no reasonable standard of care would require a person to be on guard against such acts. W. Prosser, *Law of Torts* 282–83 (4th ed. 1971).

When an insurance company writes an automobile policy, it covers foreseeable risks associated with the use of the covered automobile. A battery is not a foreseeable risk of motoring; rather, it is an intervening cause. Unless the insurer specifically contracts with the insured to cover assaults and batteries, we do not believe the insurer should have to compensate the insured for injuries resulting from an intentional battery arising out of an argument over a parked vehicle.

We acknowledge that exceptions to this basic principle exist. They are, however, extremely rare—limited to those cases where the insured automobile is an active accessory to the intentional tort. *See Klug*, 415 N.W.2d at 878; *Meric v. Mid-Century Insurance Co.*, 343 N.W.2d 688, 690 (Minn.Ct.App.1984). The Minnesota Supreme Court in *Klug* discussed in detail the role of the automobile as an active accessory in a shooting:

> Bahe used his car to keep up with Klug for over 2 miles in order to try and shoot Klug.
>
> * * * Bahe's actions of driving and shooting were inextricably linked. Had Bahe used his vehicle to drive ahead of Klug, left his vehicle, and shot Klug from the side of the road, we might have found an intervening act. * * *
>
> * * * Bahe used his car not only to maneuver himself into a position to harm Klug but also to maneuver Klug into a position from which Klug could be harmed.

*Klug*, 415 N.W.2d at 878–79.

In *Meric* this court found that a stationary van was an active accessory to the shooting death of its driver by a robber seeking to use the van as a getaway vehicle. *Meric*, 343 N.W.2d at 690. This court explained:

> [T]he assault would not have occurred had not the robber wanted the van as transportation. Because [the victim] was using the vehicle and refused to surrender it, the robber shot [the victim] and stole the vehicle, using it for his attempted get-away. The assault would not have happened if [the victim] had been on foot. No act of independent significance broke the causal link between use as a vehicle and [the victim's] death; the van was, therefore, an active accessory in the death.

*Id.*

This case is controlled by *Wieneke v. Home Mutual Insurance Co.*, 397 N.W.2d 597 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Jan. 21, 1987), and *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598 (Minn.1977). In both cases "the acts of leaving the vehicle and inflicting a battery were viewed as events of independent significance which broke the causal link between the 'use' of the vehicle and the injuries inflicted." *Holm*, 261 N.W.2d at 603; *Wieneke*, 397 N.W.2d at 600. Sturm's battery was even further removed from the vehicle than those in

*Wieneke* and *Holm.* Sturm did not leave his car to commit the battery; he was never even in it during a time material to the incident. The battery was provoked by the mere threat of his car being towed away. This causal link between the car and the injury is extremely attenuated, and we find that the battery easily breaks that link. With that link broken, the car cannot be an active accessory to the injuries.

■ The active-accessory doctrine goes beyond a mere "but for" test which the Lindseys would have us adopt. That interpretation could lead to absurd results. To be an active accessory, the vehicle must be inextricably linked to the injury. Although the position of the Larkstur vehicle may have caused the argument between Sturm and the Lindseys, we do not believe that the vehicle was inextricably linked to the assault which caused Joe Lindsey's injuries. Kerry Sturm was physically separated from the vehicle when he punched Lindsey. Furthermore, no part of the vehicle ever came into contact with the Lindseys. Rather, the parked position of the vehicle provoked an argument between an intoxicated Sturm and the Lindseys. That Sturm's anger escalated to the point of battery cannot be said to have been caused by the use of the Larkstur vehicle. Therefore, we hold that the vehicle was not an active accessory to Joe Lindsey's injuries.

Additionally, Sturm's battery of Joe Lindsey was not a foreseeable risk associated with motoring. When Larkstur purchased its automobile insurance policy, neither it nor its insurer could reasonably have foreseen the battery and the resulting injuries. Moreover, on March 20, 1987, neither the Lindseys nor Sturm himself could have foreseen that Sturm's parking of the vehicle would have produced such tragic results. We hold, therefore, that Joe Lindsey's injuries did not arise out of the use or maintenance of the Larkstur vehicle.

## DECISION

We answer the certified question in the negative; the Larkstur insurance policy does not afford coverage under its "use" provision for injuries resulting from an ar-

gument over the parked position of the Larkstur vehicle. We reverse the trial court's denial of summary judgment.

REVERSED.